[Cite as *In re Moore*, 2010-Ohio-2374.]

# Court of Claims of Ohio
## Victims of Crime Division

The Ohio Judicial Center
65 South Front Street, Fourth Floor
Columbus, OH 43215
614.387.9860 or 1.800.824.8263
www.cco.state.oh.us

IN RE: ERICKA E. MOORE


ERICKA E. MOORE

       Applicant

Case No. V2009-40544

Commissioners:
Gregory P. Barwell, Presiding
Randi M. Ostry
Elizabeth Luper Schuster

ORDER OF A THREE-COMMISSIONER PANEL

{¶ 1} On December 8, 2008, the applicant, Ericka Moore, filed a compensation application as the result of an assault which occurred on September 9, 2008. On March 26, 2009, the Attorney General issued a finding of fact and decision denying the claim pursuant to R.C. 2743.60(C), failure to fully cooperate with law enforcement. This determination was based upon inconsistent statements the applicant had provided to law enforcement and to the Newark City Law Director. The applicant initially stated she was a victim of an assault to law enforcement, but later provided a sworn statement to the City Law Director that her injuries were sustained as the result of an accident. On April 23, 2009, the applicant submitted a request for reconsideration. The applicant asserted she changed her story based upon physical threats from the offender, and that she should not be disqualified from receiving an award of reparations on that basis.

{¶ 2} On June 19, 2009, the Attorney General rendered a Final Decision finding no reason to modify its initial decision. On July 13, 2009, the applicant filed a notice of appeal from the June 19, 2009 Final Decision of the Attorney General. Hence, a hearing was held before this panel of commissioners on January 20, 2010 at 12:20 P.M.

The applicant, Ericka Moore, and her attorney Mark Poole, appeared on her behalf while the state of Ohio was represented by Assistant Attorneys General Janean Weber and Tyler Brown.

{¶ 3} Based upon the briefs filed prior to this hearing the issues to be addressed include whether the applicant qualifies as a victim of criminally injurious conduct as defined by R.C. 2743.51(C)(1) and whether the applicant fully cooperated with law enforcement as is required by R.C. 2743.60(C).

{¶ 4} Ms. Moore recounted her history of domestic violence at the hands of the offender. The applicant testified that on September 9, 2008, her husband, the offender, assaulted her in front of her two young children. Consequently, she called the battered women's shelter which in turn called the police.

{¶ 5} After the police report was made on September 9th, the offender threatened her with physical harm and/or death if she followed through on the prosecution of this matter. Based upon her history with the offender she found these threats to be credible.

{¶ 6} Ms. Moore recounted that she provided the police with a written statement concerning the assault, and the police took photos of her injuries. The applicant concedes that on October 3, 2008, she submitted a sworn written statement to the City Law Director's office that her injuries on the night of September 9, 2008 were the result of an accident. She testified she made the statement in response to threats made by the offender and because she was in fear of her life. Ms. Moore related even after she made the written statement to the Law Director's office, the offender continued to stalk, threaten, and harass her. Consequently, due to the continual fear of the offender, she filed for a civil protection order. Ms. Moore affirmatively stated that she was a victim of an intentional assault.

{¶ 7} The applicant related that she spoke to Ellen Alheim of the Newark City Law Director's office. Ms. Alheim informed her that her statement of October 3rd would be "thrown out," and the case would proceed to trial. Ms. Moore asserted she told Ms.

Alheim that she would testify at the trial. Ms. Moore testified that she never had the opportunity to speak with Amy Weeks, the prosecutor for the city of Newark. She stated that prior to the criminal trial, Ms. Moore was informed that the case would be dismissed.

{¶ 8} Upon cross-examination, the applicant admitted that she requested that the charges be dismissed against her husband in the October 3rd letter. The applicant admitted that she signed a sworn statement to that effect. The applicant admitted that between October 1st, the day charges were filed against the offender, and October 3rd, the date of the letter, she did not report any threats made by the offender against her to either the police or the prosecutor. Whereupon, the testimony of the applicant was concluded.

{¶ 9} The Attorney General called Amy Weeks, Newark City Assistant Law Director to testify via telephone. Ms. Weeks stated she was assigned to prosecute Joshua Moore for Domestic Violence as the result of an assault committed against the applicant, Ericka Moore. Ms. Weeks indicated that Ms. Moore's testimony was essential to the successful prosecution of this case. Ms. Weeks testified that the inconsistencies between the police report and the October 3rd statement made it impossible to prosecute the case. The City Law Director's office received no communications concerning threats made against Ms. Moore. Ms. Weeks stated that she first learned of threats against Ms. Moore after the charges against Mr. Moore had been dismissed.

{¶ 10} Ms. Weeks testified she had a close relationship with Ellen Alheim and at no time during their discussions concerning this matter did Ms. Alheim relate to her that Ms. Moore was threatened or harassed by the offender. Furthermore, she testified that Ellen Alheim would never tell Ms. Moore that Ms. Moore's statement of October 3rd would be disregarded and the case would proceed to trial.

{¶ 11} Upon cross-examination, Ms. Weeks admitted that victims are reluctant to testify in domestic violence cases and that she has prosecuted cases where a victim

was unwilling to testify.  However, she stated that in her experience, victims testify honestly when they are called.  Ms. Weeks stated she never spoke to Ms. Moore personally.  Ms. Weeks testified that Ms. Moore was subpoenaed to testify and was not notified that the charges had been dismissed until shortly before trial.  Finally, Ms. Moore has been charged with no crime in relation to the statements she presented.

{¶ 12} Upon questioning by the panel of commissioners, Ms. Weeks stated she was aware a civil protection order had been issued against the offender prior to the dismissal of the criminal charges.  Ms. Weeks also conceded that to obtain a civil protection order, allegations of threats, harassment, OR physical intimidation by the offender would have to be proven.  Furthermore, Ms. Weeks related a civil protection order of October 2, 2008 was dismissed for failure to offer sufficient proof and a civil protection order obtained on November 18, 2008 was dismissed on December 11, 2008, based upon the request of the applicant.  Whereupon, the testimony of Amy Weeks was concluded.

{¶ 13} The applicant asserts that criminally injurious conduct has been established by calling the police at the time of the incident, filing a police report, and having the police take pictures to document the injuries sustained.  Subsequently, charges were filed based upon this report.

{¶ 14} The applicant further asserts that after charges were filed against the offender, she was harassed, threatened and, consequently, in fear she wrote the October 3rd statement for the sole purpose of getting the offender to stop his harassing behavior.  However, the offensive behavior did not stop and the applicant filed for a civil protection order.  The civil protection order was granted *ex parte*.  At the subsequent hearing the civil protection order was dismissed and a restraining order was issued which prohibits physical contact.  The restraining order was rendered on December 11, 2008.  The applicant further states that her multiple meetings with the Newark Law Director's Victim Advocate Ellen Alheim evidence that she was cooperating.  Ms. Moore was subpoenaed to testify and never stated that she was refusing to testify.

The applicant cooperated in this matter and the ultimate decision not to prosecute was made by the prosecutor, not Ms. Moore. Accordingly, the applicant argues that the Attorney General's decision should be reversed.

{¶ 15} The Attorney General stated the panel must consider the definition of failure to fully cooperate. Any action, inaction, or inexcusable neglect which substantially impedes or impairs the investigation or prosecution of a matter is a failure to fully cooperate. In the case at bar, Ms. Moore did not request charges be filed, but charges were filed only after review of the police report by the prosecutor. During the time from the initial incident on September 9th to the filing of charges on October 1st, no documentation exists to prove that Ms. Moore was being threatened or harassed by the offender. Furthermore, the Attorney General believes this panel should give deference to the prosecutor in this case, since ultimately she is the one who has to evaluate the strengths or weaknesses of the criminal case.

{¶ 16} Furthermore, the Attorney General urges the panel to follow the judge's holding in *In re Colbert III*, V92-54501jud (6-29-95). In that case, the judge determined where the victim was the only witness to the event and chose not to proceed with the prosecution of the offender, that constituted a failure to fully cooperate within the meaning of R.C. 2743.60(C).

{¶ 17} Finally, the Attorney General cites the case of *In re Young*, V84-36249sc (10-25-84) affirmed tc (1-31-85). A single commissioner held that reporting an assault as an accident does not constitute full cooperation with a law enforcement agency. The Attorney General concluded by stating the applicant's possible criminal violations (i.e.; falsification, obstruction of official business, obstruction of justice); should not be overlooked. Therefore, the Attorney General's Final Decision should be affirmed. Whereupon, the hearing was concluded.

{¶ 18} R.C. 2743.51(C)(1) in pertinent part states:

"(C) 'Criminally injurious' conduct means one of the following:

"(1) For the purposes of any person described in division (A)(1) of this section, any conduct that occurs or is attempted in this state; poses a substantial threat of personal injury or death; and is punishable by fine, imprisonment, or death, or would be so punishable but for the fact that the person engaging in the conduct lacked capacity to commit the crime under the laws of this state."

{¶ 19} The applicant must prove criminally injurious conduct by a preponderance of the evidence. *In re Rios* (1983), 8 Ohio Misc. 2d 4.

{¶ 20} R.C. 2743.60(C) states:

"(C) The attorney general, a panel of commissioners, or a judge of the court of claims, upon a finding that the claimant or victim has not fully cooperated with appropriate law enforcement agencies, may deny a claim or reconsider and reduce an award of reparations."

{¶ 21} The Attorney General has the burden with respect to proof of non-cooperation with law enforcement authorities [exclusionary criteria R.C. 2743.60]. *In re Williams*, V77-0739jud (3-26-79); and *In re Brown*, V78-3638jud (12-13-79).

{¶ 22} "As a general rule any action, inaction, or inexcusable neglect by an applicant which substantially impedes or impairs investigation or prosecution proceedings which have been initiated by the law enforcement authorities or which would have been initiated but for the action, inaction, or inexcusable neglect, constitutes a failure to fully cooperate as required by R.C. 2743.60(C)." *In re Dray* (1989), 61 Ohio Misc. 2d 417, 419.

{¶ 23} The unique circumstances of domestic violence cases should be taken into consideration when deciding cases under R.C. 2743.60(C). *In re Sims*, V95-50361tc (10-3-97).

{¶ 24} Black's Law Dictionary Sixth Edition (1990) defines preponderance of the evidence as: "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not."

{¶ 25} Black's Law Dictionary Sixth Edition (1990) defines burden of proof as: "the necessity or duty of affirmatively proving a fact or facts in dispute on an issue raised between the parties in a cause. The obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court."

{¶ 26} The credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact. *State v. DeHass* (1967), 10 Ohio St. 2d 230, 39 O.O. 2d 366, 227 N.E. 2d 212, paragraph one of the syllabus. The court is free to believe or disbelieve, all or any part of each witness's testimony. *State v. Antill* (1964), 176 Ohio St. 61, 26 O.O. 2d 366, 197 N.E. 2d 548.

{¶ 27} From review of the case file and upon full and careful consideration given to all the testimony presented and the arguments of the parties at the hearing, we first find that the applicant has met her burden of proof to establish she was a victim of criminally injurious conduct as defined by R.C. 2743.51(C)(1), by a preponderance of the evidence. The initial police report shows that the applicant told the officers her husband had struck her, and that she showed visible signs of injury. The officers directed this report to the attention of the City Law Director. Therefore, we find that the applicant has satisfied her burden.

{¶ 28} R.C. 2743.60(C) requires that the applicant shall fully cooperate with law enforcement. The Attorney General urges us to consider the inconsistent statements the applicant provided to law enforcement and the City Law Director's office. The Attorney General contends these inconsistencies made prosecution of the offender impossible.

{¶ 29} This court has recognized that domestic violence should be treated differently than assaults occurring between strangers. Ellen Alheim succinctly characterized the internal and external conflicts suffered by the applicant as a victim of domestic violence in an email dated May 18, 2009 to an Attorney General investigator. She stated:

{¶ 30} "Based on my conversations with Ms. Ericka Moore and 20 years experience working with abused women, I believe her to be a text book classic victim of domestic violence.  She has very low self-esteem and tends to minimize Mr. Moore's culpability for the abuse, believing instead - as Mr. Moore has told her - she is to blame because she's a bad wife, incompetent, 'mental', too this or too that ...  Does she feel threatened by Mr. Moore?  I believe she does but it's situational.  When he's in her face yelling and pushing her around, yes, she's afraid.  She just doesn't blame him for his behavior.  It's always someone else's fault.  Her story did change and she didn't always want to carry through with prosecution because according to her, he'd threatened to get custody of their children and cause her to lose custody of a child from another relationship by 'proving' to domestic relation's [sic] court that she was incompetent as a mother, mentally unstable and a liar.  She really believes he is omnipotent in that way especially since he has his mother's support and would be able to hire an attorney to represent him in a custody action.  Mrs. Moore believes herself to be helpless against him.  She has no money, no attorney and does suffer from post-traumatic stress disorder and takes medication - all of which Mr. Moore said he'd use against her in court.  In my opinion, Mr. Moore has been able to manipulate her and her willingness to cooperate with prosecution by threatening to take her children and have her declared to be incompetent.  It does not surprise me that her version of the abusive incident wavered.  To me, it does not indicate that she is a liar, but a woman who feels threatened by the 'power' of her husband.  She did carry through with filing a petition for a Civil Protection Order.  The *Ex Parte* was granted and a 3 year Consent Agreement was signed by both parties."

{¶ 31} This statement corroborates the applicant's testimony that she felt coerced to make a written statement to the Law Director which exculpated the offender.  We find the applicant's statements credible concerning the offender's continued harassment, stalking, and threatening behavior toward the applicant.  Again, the statements are corroborated by the fact that she obtained an *ex parte* civil protection

order against the offender on November 18, 2008. The petition for the civil protection order outlines the harassing, stalking, and violent behavior the applicant was forced to endure. On December 11, 2008, an agreed entry was rendered by Judge Russell A. Steiner, Licking County Court of Common Pleas, Domestic Relations Division which contained the following provisions:

{¶ 32} "Respondent's (Joshua Moore) parents shall pickup and drop off the minor children during stated visitation period. Petitioner (Ericka Moore) shall arrange any additional discretionary visitation with Respondent's parents. All child exchanges shall occur at the residence of the Petitioner. Respondent shall not be present during said child exchanges."

{¶ 33} The court recognized it was in the best interest of the applicant that the offender have no contact with her even when he was exercising his visitation rights.

{¶ 34} The Attorney General urges this panel to follow the holding in *In re Colbert III*, V92-54501jud (6-29-95). In *Colbert III*, the applicant was a victim of a gunshot wound, the suspected offender was arrested and jailed, and later released when the applicant signed a non-prosecution form. However, that case differs from the case at bar. In *Colbert III*, the offender turned himself in for the shooting incident. In the case at bar, there was no arrest and there was continuing harassment, stalking and threats by the offender which was not evidenced in the *Colbert III* case.

{¶ 35} Finally, the Attorney General directs us toward *In re Young*, a case standing for the proposition that reporting an assault as an accident does not constitute full cooperation. However, the facts in *Young* are distinguishable from the facts of the case at bar. In *Young* the applicant stated he was assaulted, when in actuality he had fallen through a glass door. A police report compiled at the time of the incident revealed the applicant as well as other witnesses reported the applicant sustained injury by accidentally falling through the glass door. The applicant changed his story at the time of filing the compensation application. In the case at bar, the police report

confirms the applicant was a victim at the time of the incident and only through coercion by the offender did she change her story.

{¶ 36} Finally, Amy Weeks, Assistant City Law Director, testified that she was unaware that the applicant was being harassed, stalked, or threatened during the pendency of the criminal charges. However, she did admit that her Victim's Advocate Ellen Alheim met with the applicant numerous times during this period. From a review of the previously mentioned email it was apparent that the applicant expressed her concerns to Ms. Alheim. Whether Ms. Alheim expressed those concerns to Ms. Weeks is not the applicant's obligation and should not act as a bar to her eligibility under the program.

{¶ 37} For the foregoing reasons, we find that the Attorney General has failed to meet its burden with respect to R.C. 2743.60(C). Accordingly, the June 19, 2009 decision of the Attorney General is reversed.

IT IS THEREFORE ORDERED THAT

{¶ 38} 1) The June 19, 2009 decision of the Attorney General is REVERSED and judgment is rendered in favor of the applicant;

{¶ 39} 2) This claim is remanded to the Attorney General for total economic loss calculations and decision;

{¶ 40} 3) This order is entered without prejudice to the applicant's right to file a supplemental compensation application, within five years of this order, pursuant to R.C. 2743.68;

{¶ 41} 4) Costs are assumed by the court of claims victims of crime fund.

_____
GREGORY P. BARWELL
Presiding Commissioner

_____
RANDI M. OSTRY
Commissioner


_____
ELIZABETH LUPER SCHUSTER
Commissioner


A copy of the foregoing was personally served upon the Attorney General and sent by regular mail to Licking County Prosecuting Attorney and to:


Filed 5-14-2010

Jr. Vol. 2275, Pgs. 110-121

To S.C. Reporter 5-27-2010